FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 09 2009

JAMES N HATTEN, Clerk
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHEAPTRUCKPARTS.COM, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIVIL ACTION FILE |
| v. ) | No. 1:08-cv-3602-TCB |
| ) | |
| GODFATHER VANS, INC., ) | |
| HAROLD C. JOHNSON, JR., ) | |
| AND BRIAN CHRISTMAN, ) | |
| ) | |
| Defendants. ) | |

**O R D E R**

This matter is before the Court on Plaintiff's motion for partial

summary judgment on the issue of copyright ownership [38] and

Defendants Godfather Vans, Inc. and Harold C. Johnson, Jr.'s motion to

clarify, withdraw, or modify a joint evidentiary stipulation [48].

# I.  **Background**

Defendant Brian Christman, through his company icweb.com, develops and builds websites for clients. Plaintiff CheapTruckParts.com, LLC ("CTP")[1] sells aftermarket automobile and truck parts via its website.

In late 2000, upon learning that CTP was not satisfied with its website, Christman scheduled a meeting with Scott Drawdy, CTP's chief financial officer, to discuss an arrangement by which Christman would be retained to redevelop the website.

Initially CTP did not hire Christman as a full-time salaried employee; instead, the parties orally agreed that he would be paid ten percent of the gross sales generated by a successful website.

Christman used an open source software program known as OS Commerce Open Source ("OS Commerce") to create a prototype shopping system for the CTP website, which he populated with a small amount of test data. Christman created the prototype on a laptop computer, and it was not accessible to the public as a functioning commercial website.

---

[1] CTP is affiliated with Bluecheckeredflag.com, Inc. (f/k/a Autobahn Wholesale, Inc.) and Street Pros, LLC. Bluecheckeredflag.com, Inc. and Street Pros, LLC have assigned to CTP their ownership rights in the system for operating commercial websites that sell automobile and truck parts.

After Christman completed the prototype, CTP needed to establish a web server and a database server to host the website, change the graphical design and branding of the domain, and populate the database with actual product data including pictures, descriptions, pricing information, and HTML code affecting the display of the pages rendered by the system for hundreds of thousands of automobile and truck parts organized into categories and sub-categories. CTP purchased the hardware that was ultimately used to host the commercial version of the website.

CTP quickly became frustrated with the failure of its systems administrator to promptly set up the web server. As a result, on January 15, 2001, CTP offered Christman a full-time salaried position as its new systems administrator with an annual salary of $55,000. His day-to-day responsibilities included: (1) building and maintaining the web servers and the database server for the CTP website; (2) helping employees understand how to put actual product data into the website; and (3) maintaining CTP's computers and phone system. The commercial version of the CTP website, which incorporated the prototype modifications to OS Commerce that Christman had previously made, was created by Christman

3

and other CTP employees working under his supervision while he was a full-time employee.

On July 13, 2001, the new CTP website was fully operational and could be accessed through the domain name Zmotive.com. The copyright disclaimer (which Christman had inputted) on the website stated: "© 2001 Zmotive.com an unincorporated division of BlueCheckeredFlag.com, Inc. DBA Autobahn Wholesale, Inc." The copyright disclaimer did not mention Christman, nor did it state that Christman had any copyright ownership rights in the website.

Over a year later, on September 22, 2002, Christman changed the copyright disclaimer to read: "© 2001 Zmotive.com an unincorporated division of BlueCheckeredFlag.com, Inc. DBA Autobahn Wholesale, Inc." and on a separate line: "Site Design, Layout & Programming by: Brian Christman of ICWeb.com."

On November 22, 2002, Christman changed the disclaimer again, this time to state: "© 2000-2003 BlueCheckeredFlag.com, Inc. DBA Autobahn Wholesale, Inc." and on a separate line included the following additional copyright notice: "© 2000-2003 Site Design, Layout & Programming by: Brian Christman of ICWeb.com."

4

Thus, although the copyright disclaimer originally did not mention Christman, by November 22, 2002, he had changed it to indicate that he held the copyright for the site design, layout, and programming.

In December 2002, Christman was temporarily laid off from CTP. When this occurred, Christman entered into a contract that the parties refer to as "the mutual agreement," in which Christman agreed to "manage and maintain [the] web server, mail server, database server and Linux firewall server and allow continued use of websites." In exchange, CTP agreed to pay Christman "10% gross revenue generated on managed websites instead of current salary of $55,000/year . . . ." The mutual agreement did not reference copyright ownership.

In March 2003, Christman resumed working for CTP on a part-time hourly basis.

By January 2004, Christman had returned to full-time employment with CTP. When he returned, he no longer received commissions based upon sales generated by the CTP website and instead was paid a salary. Christman and a representative from CTP had a "pretty heated debate" about the termination of his commissions, but Christman ultimately acquiesced. The issue of copyright ownership was not discussed.

In June 2005, Christman ended his full-time employment with CTP. However, he continued to work for the company as an independent contractor with the continued responsibility of maintaining the CTP website and administrating the security aspects of the system.

In February 2007, at the direction of Defendant Harold C. Johnson, Jr., Christman agreed to build a website for Defendant Godfather Vans, Inc., a direct competitor of CTP. Christman built a similar shopping cart system that he used in designing the CTP website with other modifications that Godfather had requested.

CTP alleges that Christman copied all or a large portion of the CTP website and provided other confidential materials to Godfather.

On July 9, 2008, CTP obtained a certificate of copyright registration with the United States Copyright Office for its website. The certificate identifies CTP as the owner of the copyright in its website and specifically claims ownership in the "Text, editing, computer program, compilation in commercial website and supporting servers." The registration excludes from its scope: "Text, artwork, product descriptions, photographs and logos provided by vendors; open source software."

6

On November 8, 2008, Christman executed a document known as the "Independent Contractor Acknowledgement and Agreement," which provided that "Christman understands and agrees that the copyrights and intellectual property embodied in the software and design [in the CTP website] will remain the rights of CTP and will not be sold or reproduced without consent."

On November 24, 2008, CTP filed a complaint against Defendants Godfather Vans, Inc., its chief executive officer Harold C. Johnson, Jr., and Christman, alleging that Christman copied all or a large portion of the CTP website and provided those materials to Godfather with the intention of diverting a substantial portion of CTP's business to Godfather.

CTP asserts claims for copyright infringement, trade secret misappropriation, computer theft, tortious misappropriation, false designations of origin and false descriptions, unfair and deceptive trade practices, and expenses of litigation.

On April 8, 2009, the parties entered into a joint stipulation in which they recognized that the critical issue in this action is the ownership of the copyright in the CTP website. The parties further agreed that in the event that CTP "is determined to be the owner of the copyright in the Cheap

7

Truck Parts Website, Defendants stipulate to liability for infringement of the copyright in this work and will not further contest this issue."

On June 5, 2009, CTP filed a motion for partial summary judgment on the issue of copyright ownership.

## II.   <u>Discussion</u>

### A.   <u>Legal Standard</u>

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's

8

case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* If reasonable minds could differ as to the conclusion drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.* at 251.

**B. Analysis**

As the parties have recognized, the key issue in this action is who owns the copyright in the CTP website: CTP or Christman.

As a preliminary matter, CTP argues that its act of registering the copyright in its website is evidence of its valid ownership in the copyright. According to 17 U.S.C. § 410:

> In any judicial proceeding the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

CTP states that its website is considered an unpublished work. Moreover, even if the website were deemed a published work, it became operational

9

on July 13, 2001, but CTP waited to register the copyright until July 9, 2008. Thus, either way, CTP recognizes that the weight to be accorded the certificate of registration is within the discretion of this Court.

The registered work at issue is the commercial version of the CTP website. Specifically, the certificate of registration states that CTP holds the copyright in the "Text, editing, computer program, compilation in commercial website and supporting servers."

Notably, Defendants do not directly refute CTP's argument that the certificate of registration should be entitled to weight in the Court's copyright ownership analysis. Moreover, it is undisputed that Christman never sought to register any competing copyright in the website. The Court therefore finds that the certificate of registration, although not outcome determinative, is significant and buttresses CTP's overall position on the issue of copyright ownership.

CTP next relies upon the "work made for hire" copyright law doctrine. Specifically, CTP argues that it is the sole owner of the copyright because Christman created the commercial version of the website within the scope of his employment as an employee of CTP. As set forth in 17 U.S.C. § 201(b):

In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

A work is deemed a work for hire if it was prepared by an employee within the scope of his employment, as opposed to being created by the individual as an independent contractor.[2] 17 U.S.C. § 101; *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738 (1989).

To determine whether the relationship is one of employer/employee or employer/independent contractor, the Supreme Court has instructed that courts should be guided by general principles of the common law of agency. *Reid*, 490 U.S. at 740. Factors relevant to this determination are:

[T]he skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the third party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

<hr/>

[2] Works created by independent contractors (rather than employees) can be deemed works for hire if two conditions are satisfied: (1) the work must fit into one of nine categories of works enumerated in 17 U.S.C. § 101; and (2) the parties must expressly agree in a written signed instrument that the work will be considered a work made for hire. *See* 17 U.S.C. § 101. It is undisputed that these conditions are inapplicable in this action.

11

*Id.* at 751-52.

According to CTP, the record evidence demonstrates that Christman (with the assistance of other employees working under his supervision), created the commercial version of the website as an employee of CTP rather than as an independent contractor. Moreover, CTP points out that the parties did not enter into any written instrument that granted Christman any copyright interest in the website.

Defendants concede that there is no written instrument granting Christman an ownership interest. However, Defendants assert that the work made for hire doctrine is inapplicable because Christman created the prototype for the website in late 2000 as an independent contractor, prior to becoming an employee of CTP. In furtherance of this argument, Defendants point out that CTP did not initially retain Christman as a salaried full-time employee but instead gave him ten percent of the profits generated by a successful website. Defendants also state that Christman developed the prototype, which included the programming code, in his spare time and that CTP did not control the manner in which he performed the work.

12

Although the parties' briefs are not altogether clear, the record evidence appears to indicate that when the website project started in late 2000, Christman was retained by CTP as an independent contractor, notwithstanding the fact that the parties never defined their relationship as such at that time. The facts that lead the Court to this conclusion include the following: Christman was paid by commission based upon a percentage of website sales rather than a salary; he had discretion regarding his work hours and location; and he had a high degree of autonomy.

However, as CTP points out it, it is critical to examine what type of work Christman performed in late 2000 and the scope of CTP's copyright ownership claim. According to CTP, when Christman was first retained, he worked only on the prototype for the website. Notably, CTP expressly disclaims that it owns any copyright in the prototype that Christman created. Instead, CTP claims that it owns the copyright in the commercial version of the website, which was not fully created and implemented until Christman's employment status changed to that of a full-time salaried employee in January 2001.

CTP explains in its brief that the development of the commercial version of the website from the earlier prototype was no small task for

13

Christman. Although Christman testified that he spent tens of hours developing the prototype in late 2000, starting in January 2001, Christman and other CTP employees working under his supervision spent thousands of hours configuring the commercial version of the website and loading it with hundreds of thousands of automobile parts organized into categories and sub-categories. The Court finds that this evidence strongly indicates that the overwhelming majority of the commercial version of the website was created when Christman was a CTP employee rather than an independent contractor.

The Court also finds it significant that Defendants have not located or proffered a copy of the prototype from which the Court could ascertain the significance of the work that Christman performed in late 2000 as an independent contractor. As a result, there is no way for the Court to determine the nature of that work and whether it contributed substantially and significantly to the final product in which CTP claims copyright ownership. Thus, the Court has no choice but to conclude that the bulk of the work that Christman performed on the commercial website was performed while he was a CTP employee rather than an independent contractor.

14

For these reasons, the Court finds that Defendants have failed to rebut CTP's argument that the matter in which CTP claims copyright ownership—the commercial version of the website—was created when Christman was a full-time employee. As such, the commercial version of the website is deemed a work made for hire, and pursuant to 17 U.S.C. § 201(b), CTP, as Christman's employer, is the owner of the copyright.

Furthermore, although the Court is not convinced by CTP's alternative argument that the doctrine of copyright waiver would apply in this action,[3] the Court does agree with CTP that Christman's conduct during the course of the relationship between the parties was inconsistent with that of a copyright owner. In particular, the Court finds it significant that Christman: (1) failed to obtain a written agreement reserving any copyright rights upon accepting full-time salaried employment with CTP in 2001; (2) placed an original copyright notice on the CTP website identifying CTP as the sole copyright owner; (3) acquiesced to an employment change in December 2002 that provided Christman with commission payments

---

[3] Waiver requires the "intentional relinquishment or abandonment of a known right." *United States v. Johnson,* 295 Fed. Appx. 342, 349 (11th Cir. 2008); *Hustlers, Inc. v. Thomasson,* 307 F. Supp. 2d 1375, 1379 (N.D. Ga. 2004). The Court is not persuaded that the record evidence demonstrates as a matter of law that Christman intentionally and knowingly waived whatever copyright interest he may have had in the website.

15

without obtaining a written agreement addressing copyright ownership rights; (4) failed to raise the issue of copyright ownership when having a fairly heated debate with the owner of CTP about the termination of the commission payments; and (5) on November 8, 2008, executed a document known as the "Independent Contractor Acknowledgement and Agreement," which provides that "Mr. Christman understands and agrees that the copyrights and intellectual property embodied in the software and design [in the CTP website] will remain the rights of CTP and will not be sold or reproduced without consent."

Defendants urge that despite all of the above evidence indicating that CTP is the owner of the copyright, the Court should interpret the December 2002 mutual agreement as recognizing Christman's copyright interest in the website.[4] As noted above, in December 2002 Christman was temporarily laid off from CTP. When this occurred, he entered into a contract that the parties refer to as the mutual agreement. Pursuant to that agreement, Christman agreed to "manage and maintain web server, mail

---

[4] Defendants also rely upon an unsigned agreement referred to as the "autobahn agreement" that is dated December 6, 2002. Defendants urge that certain language in the autobahn agreement supports their argument that Christman retained an ownership interest in the website. However, because the agreement is not executed, the Court finds that it does not constitute probative evidence regarding the copyright ownership issue.

server, database server and Linux firewall server and allow continued use of websites." In exchange, CTP agreed to pay Christman a commission based upon sales generated by the website.

Defendants argue that the agreement's use of the words "allow continued use of websites" demonstrates that Christman held the copyright in the website.

The Court disagrees with Defendants' interpretation of the mutual agreement. It is readily apparent that the phrase "allow continued use of websites," when read in context with the other language in the agreement, reflects nothing more than the fact that Christman still possessed some responsibilities as an administrator of the website even though he was no longer a full-time employee. Thus, the purpose of the above language was to ensure that Christman would maintain the websites and keep them operational so that they were usable by both CTP and the public. The agreement is silent with respect to copyright ownership.

For all of these reasons, including the fact that CTP registered the copyright at issue, the Court finds that CTP has demonstrated as a matter of law that it is the owner of the copyright in the commercial website. The Court notes, however, that CTP's copyright is limited to the scope of its

certificate of registration. Thus, CTP's copyright in its website is limited to the "Text, editing, computer program, compilation in commercial website and supporting servers."

Although Defendants do address the copyright ownership issue in their response brief, in an unexpected twist, the vast majority of their brief is spent attempting to inject a new issue into the case. Specifically, Defendants argue that regardless of the copyright ownership issue, the copyright for which CTP seeks protection is invalid.

In support of this argument, Defendants maintain that: (1) the work created by Christman is not copyrightable because it does not amount to original expression, which is a threshold requirement of copyright protection, *see Feist Publ'ns, Inc. v. Rural Tel. Service Co.*, 499 U.S. 340, 348 (1991); (2) a finding of copyright validity would violate the license agreement of OS Commerce; and (3) the copyright is not valid because it is comprised of preexisting material that was in the public domain.

According to CTP, Defendants' sudden challenge to the validity of the copyright is misplaced because this was not an issue within the scope of CTP's motion for partial summary judgment. Moreover, CTP urges that any challenge relating to copyright validity is rendered moot by the

April 8, 2009 evidentiary stipulation that the parties entered into, in which they agreed that the critical issue in this case is "which party is the rightful owner of the copyright" in the website. CTP explains that pursuant to the stipulation, expedited discovery was conducted on only the ownership issue, and issues regarding copyright validity were never contemplated nor addressed.

The Court agrees with CTP that the manner in which Defendants raised the issue of copyright validity—by way of an argument in their response brief—is improper. Although Defendants did not expressly stipulate to the validity of the copyright at issue, the joint stipulation implicitly assumed that the copyright was valid and that the only issue remaining was who owned it. Expedited discovery was conducted on this single issue, and the parties proceeded with the understanding that the issue of copyright ownership would be the subject of a motion for partial summary judgment. For these reasons, the Court finds that it would be improper to address the validity issue at this time.

Suffice it to say, the Court is skeptical that Defendants can even prevail on the validity issue in light of the fact that it is well recognized that the originality requirement in copyright law requires only a "minimal

degree of creativity," and at least on the record before the Court, CTP's website appears to meet this standard. *See Feist*, 499 U.S. at 345. Moreover, to the extent that the website may incorporate some matters that are in the public domain, the website as a whole may still be copyrightable as a compilation. *See S. Bell Tel. v. Associated Tel. Directory Publishers*, 765 F.2d 801, 810 (11th Cir. 1985); *see also* 17 U.S.C. § 101. Finally, the Court is not persuaded (at least at this stage of the case) that a finding of copyright validity is precluded by the OS Commerce license. Nevertheless, if Defendants wish to pursue the copyright validity issue with the benefit of further discovery, they may do so in the event that this case progresses.

There is one final matter to be addressed in this Order. In the midst of the briefing in connection with CTP's motion for partial summary judgment, Defendants Godfather Vans, Inc. and Harold C. Johnson, Jr. filed a motion to clarify, withdraw, or modify the April 8, 2009 joint evidentiary stipulation that the parties entered into.

As explained above, in the joint stipulation the parties recognized that the critical issue in this action is the ownership of the copyright in the CTP website. The parties further agreed that in the event that CTP "is determined to be the owner of the copyright in the Cheap Truck Parts

Website, Defendants stipulate to liability for infringement of the copyright in this work and will not further contest this issue."

Godfather and Johnson now argue that they did not intend to stipulate that they infringed CTP's commercial website. With little explanation, they assert that the stipulation related only to Christman's copyright ownership in the programming code. Consequently, Godfather and Johnson contend that the Court should modify the stipulation.

The Court declines to do so. In our judicial system, "[s]tipulations fairly entered into are favored." *Burstein v. United States*, 232 F.2d 19, 23 (8th Cir. 1956). The stipulation entered into by the parties in this action was clear and unambiguous. Contrary to the argument advanced by Godfather and Johnson, the plain language of the stipulation provides that it pertains to the ownership of the copyright in the CTP website. The stipulation does not make any distinction regarding the programming code and in fact nowhere references the programming code.

As CTP explains, all of the parties in this action entered into the joint stipulation after conducting the Rule 26 conference as part of the joint preliminary report and discovery plan and as a result of negotiations and agreement among all parties to this action. The joint agreement resolved

the issue of copyright infringement and established an accelerated discovery period and briefing schedule for the critical issue of copyright ownership. On April 13, 2009, the Court entered an Order approving the joint preliminary report and discovery plan and the associated joint stipulation.

Since entry of that Order, the parties have performed in accordance with the stipulation by conducting limited discovery in preparation for the briefing of CTP's motion for partial summary judgment on the issue of copyright ownership.

The Court presumes that Godfather and Johnson wish to modify the joint stipulation to shift their legal strategy. However, they have failed to articulate an adequate basis to avoid the stipulation. The Court finds that in the absence of a showing of manifest injustice, allowing Godfather and Johnson to extricate themselves from the joint stipulation so that they can shift their legal strategy would unfairly prejudice CTP, which bargained for, relied on, and performed under the stipulation. *See Logan Lumber Co. v. C.I.R.*, 365 F.3d 846, 855 (5th Cir. 1966) (a party may be relieved of a stipulation to prevent manifest injustice). Accordingly, the Court denies Godfather and Johnson's motion to modify the stipulation.

## III.  **Conclusion**

For the foregoing reasons, the Court GRANTS CTP's motion for partial summary judgment [38] and DENIES Godfather and Johnson's motion to clarify, withdraw, or modify the joint evidentiary stipulation [48].

As part of their joint stipulation, the parties agreed that within ten days following the Court's resolution of the copyright ownership issue, they would conduct a post-ruling settlement conference. In light of the Court's ruling on the copyright ownership issue, the Court therefore anticipates that the parties will hold such a conference.

IT IS SO ORDERED this 9th day of September, 2009.

Timothy C. Batten, Sr.
United States District Judge