IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEAPTRUCKPARTS.COM, LLC,      )
                               )
            Plaintiff,         )
                               )
v.                             )        CIVIL ACTION FILE
                               )
                               )        NO. 1:08-cv-3602-TCB
GODFATHER VANS, INC.,          )
HAROLD C. JOHNSON, JR., and    )
BRIAN CHRISTMAN,               )
                               )
            Defendants.        )

## **O R D E R**

This matter is before the Court on Defendants Godfather Vans, Inc.
("Godfather") and Harold C. Johnson, Jr.'s ("Johnson") motion for partial
summary judgment [73], Plaintiff CheapTruckParts.com, LLC's ("CTP")
motion for partial summary judgment on its claims for trade secret
misappropriation and unfair competition [76], and CTP's motion for partial
summary judgment on the issue of entire liability [91].

## I.  **Background**

Defendant Brian Christman,[1] through his company icweb.com, develops and builds websites for clients.  CTP[2] sells aftermarket automobile and truck parts via its website.

In late 2000, upon learning that CTP was not satisfied with its website, Christman scheduled a meeting with Scott Drawdy, CTP's chief financial officer, to discuss an arrangement by which Christman would be retained to redevelop the website.  After a period of negotiations, CTP hired Christman to redesign CTP's website and assume myriad information technology ("IT") duties at CTP.

On July 13, 2001, the new CTP website was fully operational and could be accessed through the domain name Zmotive.com.  The CTP website featured hundreds of thousands of aftermarket automobile and truck parts.

---

[1] The status of the claims against Christman in this litigation is unclear. Christman is proceeding pro se; he neither joined in the motion for partial summary judgment filed by Godfather and Johnson, nor did he file any response to CTP's motion for partial summary judgment.

[2] CTP is affiliated with Bluecheckeredflag.com, Inc. (f/k/a Autobahn Wholesale, Inc.) and Street Pros, LLC.  Bluecheckeredflag.com, Inc. and Street Pros, LLC have assigned to CTP their ownership rights in the system for operating commercial websites that sell automobile and truck parts.

By June 2005, Christman ended his full-time employment with CTP. However, he continued to perform some work for the company as an independent contractor with the ongoing responsibility of maintaining the CTP website and administrating the security aspects of the system.

In February and September of 2007, Godfather, a direct competitor of CTP in the market for aftermarket automobile parts, made two hiring decisions that would soon trigger the engine of litigation.

First, in need of a good website developer, Godfather's chief executive officer, Johnson, hired Christman to rebuild the company website. In connection with this work, Godfather engaged Christman as an independent contractor and paid him $4,000. Christman built a similar shopping cart system for Godfather that he used in designing the CTP website. CTP alleges that in designing and implementing Godfather's website, Christman copied substantial portions of CTP's website and provided other confidential materials to Godfather.

Second, in need of someone to input product data and perform other website functions, Godfather hired Jason Chandler, a former CTP employee. CTP alleges that in the course of his work, Chandler copied a series of photographs that had been featured on CTP's website.

On November 24, 2008, CTP filed this action against Godfather, Johnson, and Christman, alleging that they copied substantial portions of the CTP website with the intention of diverting business away from CTP and to Godfather. Among other things, CTP alleges that Godfather, Johnson and Christman copied or substantially reproduced product descriptions, photographs, HTML code, and/or graphical layouts of product data.

In commencing litigation, CTP was not content, however, to merely rely upon a traditional copyright infringement theory. Instead, CTP elected to take the "kitchen-sink" approach, raising every conceivable claim that could arguably apply to the conduct in question without regard to the legal viability of those claims. CTP's complaint asserts claims for (1) copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*; (2) trade secret misappropriation under the Georgia Trade Secrets Act ("GTSA"), O.C.G.A. § 10-1-760 *et seq.*; (3) computer theft under the Georgia Computer Systems Protection Act, O.C.G.A. § 16-9-90 *et seq.*; (4) tortious misappropriation of personalty pursuant to O.C.G.A. § 51-10-1; (5) false designations of origin and false descriptions under the Lanham Act, 15 U.S.C. § 1125; (6) unfair and deceptive trade practices under the Uniform

4

Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*; and (7) expenses of litigation pursuant to O.C.G.A. § 13-6-11.

On April 8, 2009, the parties entered into a joint stipulation with respect to CTP's copyright infringement claim. The parties agreed that in the event that CTP "is determined to be the owner of the copyright in the Cheap Truck Parts Website, Defendants stipulate to liability for infringement of the copyright in this work and will not further contest this issue."

On June 5, 2009, CTP filed a motion for partial summary judgment on the issue of copyright ownership [38]. On September 9, 2009, the Court ruled in favor of CTP [53]. Thus, with the exception of damages, CTP's copyright infringement claim has been resolved.

The parties then sought to narrow the remaining claims at issue.

On December 15, 2009, Godfather and Johnson filed a motion for partial summary judgment on CTP's claims for (1) trade secret misappropriation; (2) computer theft; (3) tortious misappropriation; (4) false designations of origin and false descriptions under the Lanham Act; (5) unfair and deceptive trade practices; and (6) expenses of litigation [73]. In the same motion, Godfather and Johnson also seek summary

5

judgment on portions of the damages sought by CTP in connection with its copyright infringement claim.

Also on December 15, 2009, CTP filed a motion for partial summary judgment on its claims for trade secret misappropriation, false designations of origin and false descriptions under the Lanham Act, and unfair and deceptive trade practices [76].[3]

Unfortunately, the parties' summary judgment briefs are far from models of clarity. Notwithstanding this, the Court has done its best to fill in the many gaps left by the parties and decipher the various arguments that are raised.

## II.  **Discussion**

### A.  **Legal Standard**

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a

---

[3] CTP has also filed a motion for partial summary judgment on the issue of entire liability [91], which is difficult to comprehend and is altogether peculiar. It appears that CTP wants the Court to determine at this stage of the litigation whether joint and several liability under Georgia law may apply to any final judgment that would be rendered in this action or whether joint and several liability has been abolished in light of the Georgia Tort Reform Act of 2005. Because no final judgment has been entered in this action, the Court finds CTP's request to be premature and improper. Accordingly, at this time, the Court will deny CTP's motion for partial summary judgment on the issue of entire liability [91].

matter of law. FED. R. CIV. P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the [nonmoving party] upon the evidence presented." *Id.* If reasonable minds could differ as to the conclusion drawn from the evidence in the record, the motion for summary judgment should be denied. *Id.* at 251.

## B.  **Analysis**

### 1.  **Trade Secret Misappropriation**

As previously noted, CTP's trade secret misappropriation claim is brought pursuant to the GTSA.  Under the GTSA, a plaintiff must prove that "(1) it had a trade secret and (2) the opposing party misappropriated the trade secret."  *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998).

As a threshold matter, Godfather and Johnson argue that CTP's trade secret claim is preempted by the Copyright Act.

Section 301 of the Copyright Act contains a preemption provision. 17 U.S.C. § 301.  In *Crow v. Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983), the Eleventh Circuit explained that § 301 establishes a two-pronged test for preemption.  The first prong requires the Court to determine whether the rights at issue fall within the "subject matter of copyright" as set forth in §§ 102 and 103 of the Copyright Act.  Here, the parties appear to agree that the rights at issue fall within the subject matter of copyright, as § 102(a)(1) provides copyright protection for computer software, which is treated as a literary work under the Copyright Act.  Thus, the first prong of the preemption test is arguably satisfied.

8

The second prong requires the Court to determine whether the rights at issue are equivalent to the exclusive rights conferred by § 106 of the Copyright Act. The exclusive rights of § 106 apply to reproduction, preparation of derivative works, distribution, performance, and display of copyrighted material. 17 U.S.C. § 106. If the rights at issue in the state law claims are equivalent to those § 106 rights, then the state law claim is preempted. *Hustlers, Inc. v. Thomasson*, 253 F. Supp. 2d 1285, 1292 (N.D. Ga. 2002).

In other words, a state law right is not equivalent to one established in the Copyright Act when it requires action "beyond mere reproduction or the like." *CMAX/Cleveland, Inc. v. UCR, Inc.*, 804 F. Supp. 337, 358 (M.D. Ga. 1992). "If other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption." *Thomasson*, 253 F. Supp. 2d at 1292-93 (quoting *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986)). To survive preemption, the Eleventh Circuit has made clear that the elements of the

9

state cause of action must differ from the copyright claim in a meaningful way. *Crow,* 720 F.2d at 1225-26.

As a general rule, courts have concluded that trade secret misappropriation claims are not preempted by the Copyright Act. For example, in *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1549 (11th Cir. 1996), the Eleventh Circuit explained that "state law trade secret statutes have been deemed not to be preempted because the plaintiff must prove the existence and breach of a confidential relationship in order to prevail." As the Second Circuit has noted, "[t]he defendant's breach of duty is the gravamen of such trade secret claims, and supplies the 'extra element' that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement . . . ." *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 717 (2d Cir. 1992); *see also Warrington Assocs., Inc. v. Real-Time Eng'g Sys., Inc.,* 522 F. Supp. 367, 369 (N.D. Ill. 1981) (trade secret misappropriation is premised on breach of confidentiality, not copying).

Godfather and Johnson have failed to articulate any reason why CTP's trade secret misappropriation falls outside of this general rule. Accordingly, because CTP's trade secret misappropriation claim involves

10

allegations that Christman breached a duty of confidentiality that he owed to CTP, the claim is not preempted by the Copyright Act.

Having resolved the threshold issue of preemption, the Court can now turn to the merits of CTP's trade secret misappropriation claim. At least for purposes of summary judgment, the parties appear to agree that a protectable trade secret exists in this case, which presumably is comprised of some combination of the development code from the password-protected back-end portion of CTP's website and other confidential information that Christman obtained in the course of his work for CTP.

The central dispute between the parties is whether Godfather and Johnson misappropriated the trade secret. There are several ways in which a defendant can misappropriate a trade secret. Generally, a defendant misappropriates a trade secret when he acquires a trade secret from someone he has reason to know acquired the trade secret by improper means, or when the defendant "discloses or uses a trade secret of another, without express or implied consent, knowing that at the time of disclosure or use the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Penalty Kick Mgmt. Ltd. v.*

*Coca Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003); *see also* O.C.G.A. § 10-1-761(2).

Although the GTSA explains different ways that misappropriation can occur, the parties focus on O.C.G.A. § 10-1-761(2)(A), i.e., whether Godfather and Johnson acquired CTP's trade secret knowing or having reason to know that the trade secret was acquired by improper means.

Godfather and Johnson contend that CTP has failed to adduce any evidence that they committed fraud or engaged in a misrepresentation in the acquisition of the trade secret. However, a showing of fraud or misrepresentation is not required to establish "improper means." Pursuant to O.C.G.A. § 10-1-761(a), "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship *or other duty to maintain secrecy or limit use . . . .*" (emphasis added).

It is true that Christman did not enter into a confidentiality agreement with CTP during the course of his employment. However, this does not bar CTP from arguing that Christman still owed it a duty of confidentiality. *Accord Avnet, Inc. v. Wyle Labs., Inc.*, 263 Ga. 615, 617, 437 S.E.2d 302, 304 (1993) ("Even in the absence of an express agreement,

it is an implied term of an employment contract that an employee will not divulge a trade secret learned by virtue of his employment to a competitor of his former employer") (quoting *Am. Bldgs. Co. v. Pascoe Bldg. Sys., Inc.*, 260 Ga. 346, 350, 392 S.E.2d 860, 864 (1990)).

Although there is not overwhelming record evidence that Christman owed a duty of confidentiality with respect to the matters in dispute in this litigation, there is sufficient evidence to preclude summary judgment on this issue. Christman, as the sole administrator of CTP's website, had access to the "back-end" of CTP's IT infrastructure. He was the only person who knew the password to access the "back end" of the website and other non-public components of the website. A reasonable trier of fact could find that Christman believed that his use of the non-public portions of the website was limited and based upon an understanding that the information he obtained therefrom would be kept confidential. *See Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1339 (N.D. Ga. 2007) (employee's high level of access to corporation's financial and accounting information gave rise to a duty to maintain secrecy).

Even assuming that Christman acquired/used CTP's trade secret by improper means, Godfather and Johnson argue that there is no evidence

that they had any knowledge that Christman owed any duty of confidentiality to CTP or that Christman was in fact using CTP's confidential information in the course of his work on the Godfather website. According to Godfather and Johnson, Christman reassured them that he had the right to install the shopping cart system with modifications because it was based upon an open source computer program.

Although this defense may well prove successful at trial, the Court cannot find that as a matter of law Godfather and Johnson did not know or should not have had reason to know that the work performed by Christman was developed at least in part through the use of CTP's confidential information. Although the evidence is unclear, it appears that Godfather and Johnson may have known that Christman was CTP's IT administrator. This fact, combined with the fact that CTP was Godfather's main rival in the industry, perhaps should have given Godfather and Johnson pause as to whether some of the information that Christman used in the course of his work for Godfather was confidential information belonging to CTP. It is also significant that Godfather and Johnson paid Christman only $4,000 to revamp Godfather's website, a relatively small sum of money that may have been indicative of the fact that Christman would be "borrowing" from

14

proprietary work that he already performed for CTP. Finally, it is undisputed that Godfather copied substantial portions of CTP's website.

Taken together, the facts and circumstances presented here create a genuine issue of material fact concerning whether Johnson and Godfather knew or had reason to know that Christman acquired the trade secret information under circumstances giving rise to a duty to maintain its secrecy or limit its use. Accordingly, the Court will deny summary judgment to all parties with respect to this claim.[4]

### 2. **Computer Theft**

CTP's computer theft claim is based upon O.C.G.A. § 16-9-93(a), which provides that the tort of computer theft occurs when a person uses a computer or computer network with knowledge that such use is without authority and with the intention of:

---

[4] Because it is undisputed that Christman was retained by Godfather as an independent contractor rather than as an employee, any tortious conduct that Christman committed during the scope of his employment with Godfather is not automatically imputed to Godfather under a vicarious liability theory. *See* O.C.G.A. § 51-2-5. Pursuant to O.C.G.A. § 51-2-5, the general rule is that an employer cannot be held liable for torts committed by its independent contractor, and the exceptions to that rule pertain only to negligent acts committed by an independent contractor. *See Peachtree-Cain Co. v. McBee,* 170 Ga. App. 38, 39, 316 S.E.2d 9, 10 (1984). Although the parties largely gloss over this issue in their briefs, this will present a key challenge for CTP at trial, as it will be unable to rely solely upon Christman's conduct in seeking to hold Godfather liable for trade secret misappropriation.

(1) Taking or appropriating any property of another, whether or not with the intention of depriving the owner of possession;

(2) Obtaining property by any deceitful means or artful practice; or

(3) Converting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property . . . .

Although the exact basis for CTP's computer theft claim is convoluted, CTP appears to contend that Godfather and Johnson's copying of photographs and product descriptions from its website amounts to computer theft.[5]

After careful review, the Court agrees with Godfather and Johnson that CTP's computer theft claim cannot withstand summary judgment. A necessary ingredient of a computer theft claim is that the appropriation in question be achieved by the unauthorized use of a computer. *SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347, 1368 (N.D. Ga. 2006). Although CTP alleges that Godfather and Johnson copied images and text from its website, the copying was undertaken from Godfather's

---

[5] CTP does not contend that the copying of the development code from the back-end of its website constitutes computer theft, presumably because such a claim would most likely be preempted by the GTSA. *See Penalty Kick Mgmt.*, 318 F.3d at 1297-98.

computers and there is no allegation that any computer use was unauthorized. *Accord SCQuARE Int'l, Ltd.*, 455 F. Supp. 2d at 1368 (granting summary judgment to the defendant because the misappropriation was not achieved by the unauthorized use of a computer); *see also Wachovia Ins. Svcs., Inc. v. Fallon*, 299 Ga. App. 440, 450, 682 S.E.2d 657, 665 (2009) (finding that there was no evidence that former employees used a computer or computer network with knowledge that such use was without authority as required to support a claim of computer theft). Consequently, the Court will grant summary judgment to Godfather and Johnson on CTP's computer theft claim.

### 3. **Tortious Misappropriation**

CTP also asserts a claim for tortious misappropriation pursuant to O.C.G.A. § 51-10-1, which provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." This statute "embodies the common law action of trover and conversion." *Levenson v. Word*, 294 Ga. App. 104, 106, 668 S.E.2d 763, 765 (2008). The gravamen of conversion is "an act of dominion over the personal property of another inconsistent with his rights." *Id.*

(quoting *Md. Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261, 356 S.E.2d 877, 880 (1987)).

CTP alleges that the wrongful act of dominion here was Godfather and Johnson's copying of the photographs and product descriptions from CTP's website.[6]  The Court finds that this claim cannot survive summary judgment because it is preempted by the Copyright Act.

Specifically, under the circumstances of this case, the Court finds that the protection against copying afforded by § 106 of the Copyright Act is equivalent to the protection offered by O.C.G.A. § 51-10-1.  CTP has not identified—and the Court cannot find—an extra element that would render CTP's tortious misappropriation claim qualitatively different from a claim for copyright infringement under the Copyright Act.  Accordingly, the Court finds that CTP's tortious misappropriation claim is preempted.  *Accord PHA Lighting Design, Inc. v. Kosheluk*, No. 1:08-cv-1208-JOF, 2010 WL 1328754, at *9 (N.D. Ga. Mar. 30, 2010) (finding that the plaintiff's tortious misappropriation claim was preempted by the Copyright Act).

---

[6] CTP concedes that the GTSA would preempt its tortious misappropriation claim if it were based upon the copying of the confidential development code from the back-end of its website. *See Penalty Kick Mgmt.*, 318 F.3d at 1297-98.

### 4. False Designations of Origin and False Descriptions Under the Lanham Act

Next, CTP alleges that Godfather and Johnson's conduct violated the Lanham Act. Section 43(a) of the Lanham Act prohibits a person from making any false designation of origin or false or misleading description of fact which is likely to cause confusion as to the origin of his goods or services. 15 U.S.C. § 1125(a)(1)(A).

CTP broadly asserts that Godfather and Johnson's copying of CTP's "about us" page and photographs caused a likelihood of confusion and constituted unfair competition.

After careful review, the Court agrees with Godfather and Johnson that CTP has failed to allege a viable Lanham Act claim. CTP suggests in its briefs that Godfather and Johnson's actions amounted to "reverse passing off," which occurs when a defendant "misrepresents [the plaintiff's] goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003). To sustain such a claim, a plaintiff must prove "(1) the item at issue originated with the plaintiff; (2) the defendant falsely designated the origin of the work; (3) the false designation was likely to cause consumer confusion; and (4) the plaintiff was harmed by the defendant's false designation." *Del Monte Fresh Produce Co. v. Dole Food*

19

*Co.*, 136 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001) (citing *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 970 (2d Cir. 1997)).

CTP has failed to adduce evidence to satisfy these four elements. CTP's Lanham Act claim is based upon nothing more than Godfather and Johnson's copying of certain text, photographs, and ideas from CTP's website. As such, CTP's Lanham Act claim is merely a restatement of its copyright infringement claim. Although Godfather and Johnson have stipulated to copying, they did not falsely designate a product made by CTP as their own or falsely claim that CTP's website was actually Godfather's. Consequently, CTP's Lanham Act claim is fundamentally flawed.

In this regard, the Court finds the Supreme Court's decision in *Dastar* to be instructive. *Dastar* involved a 1949 television series called "Crusader in Europe," which was based upon General Eisenhower's written account of the campaign in Europe during World War II. Twentieth Century Fox owned the exclusive rights in the television series, but the copyright expired in 1977, leaving the series in the public domain. In 1995, Dastar purchased copies of the original, public-domain television series, and edited them. Dastar substituted a new opening sequence, credit page, and closing, and made various other changes. Fox and several licensees brought suit,

alleging that Dastar's sale of its version of the series without proper attribution constituted "reverse passing off" in violation of § 43(a) of the Lanham Act.

The Court rejected the plaintiffs' claim, concluding that the term "origin" in § 43(a) applies only to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37. The Court carefully distinguished Lanham Act claims from copyright claims, noting that the former "were *not* designed to protect originality or creativity," while the latter were. *Id.* The Court concluded that claims of false authorship and reverse passing off, when raised to protect an interest in the intellectual content of communicative products, were not actionable under § 43(a) and should instead be pursued under copyright law. *Id.*

Although there clearly are factual differences between *Dastar* and the case at bar, the reasoning in *Dastar* is instructive. CTP has not accused Godfather and Johnson of taking any product owned by CTP and attempting to sell it as their own under a similar name. Rather, CTP's core allegation is that Godfather and Johnson copied certain elements from

21

CTP's website. *Dastar* makes clear that such claims are not actionable under the Lanham Act.

Moreover, even if the reasoning of *Dastar* did not bar CTP's Lanham Act claim, the claim still fails to satisfy the other elements delineated above. In particular, CTP has also failed to adduce evidence of harm under the Lanham Act. The only harm identified by CTP (introduced through an affidavit executed by its CEO, Charles James Clarke, III) is a single phone call that it allegedly received from an individual who had visited Godfather's website and, who, upon reading Godfather's "about us" page, wondered if CTP had merged with Godfather. Not only is such evidence inadmissible hearsay, it is also insufficient evidence of harm to permit CTP's Lanham Act claim to withstand summary judgment. In reaching this conclusion, it bears noting that once Godfather and Johnson were notified of the copied photographs and "about us" text on Godfather's website, they promptly removed the offending content. Because of the short period of time the copied material appeared on the website, the Court finds that there was no likelihood of confusion.[7] For all of these reasons, the Court finds

---

[7] Indeed, unlike most plaintiffs who assert a Lanham Act claim, CTP fails to discuss or apply the seven-factor likelihood of confusion test to the facts here. *See Smith*

that CTP has failed to adduce any competence evidence of any harm that it suffered that would permit its Lanham Act claim to go forward.

### 5. **Unfair and Deceptive Trade Practices**

CTP's unfair and deceptive trade practices claim under Georgia's UDTPA is a mirror image of its Lanham Act claim. Because CTP's Lanham Act claim fails as a matter of law, its UDTPA claim necessarily fails as well. *Accord PHA Lighting Design*, 2010 WL 1328754, at \*7-8; *Camp Creek Hospitality Inns, Inc.*, 139 F.3d at 1413; *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1539 (11th Cir. 1985).

### 6. **Expenses of Litigation**

CTP's claim for expenses of litigation appears to be based exclusively upon the bad faith prong of O.C.G.A. § 13-6-11.[8] Bad faith has been defined as "actual or constructive fraud or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake, but prompted by some sinister

---

*v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1316 (N.D. Ga. 2008) (setting forth the factors relevant in likelihood of confusion analysis).

[8] To the extent that CTP also seeks to assert a claim under the "stubbornly litigious" or "causing unnecessary trouble and expense" prongs of § 13-6-11, the Court finds that CTP has also failed to proffer any evidence that would support such a claim, and in any event such a claim would fail because a bona fide dispute exists between the parties. *Accord McLeod v. Robbins Ass'n*, 260 Ga. App. 347, 349, 579 S.E.2d 748, 750 (2003).

motive." *ADP-Fin. Computer Servs., Inc. v. First Nat'l Bank of Cobb County*, 703 F.2d 1261, 1267 (11th Cir. 1983) (quoting *Schaffer v. Wolbe*, 113 Ga. App. 448, 449, 148 S.E.2d 437, 439 (1966)).

The Court finds that CTP's expenses of litigation claim fails as a matter of law because CTP has not proffered any evidence of bad faith on the part of Godfather and Johnson. Other than a conclusory averment in its brief regarding Godfather and Johnson's bad faith, CTP has not cited any evidence of bad faith or explained how the conduct in question amounts to bad faith. Accordingly, the Court will grant summary judgment in favor of Godfather and Johnson on this claim as well.

### 7. **Copyright Damages**

Although the parties entered into a joint stipulation regarding Defendants' liability for copyright infringement, the issue of what damages CTP is entitled to recover in connection with this claim is still in dispute.

CTP makes clear in its briefs that it seeks only actual damages[9] under the Copyright Act. Pursuant to 17 U.S.C. § 504(b):

---

[9] The parties agree that to the extent that CTP previously sought statutory damages and/or enhanced damages under the Copyright Act, it no longer seeks those categories of damages.

24

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

"Despite the existence of § 504(b)'s burden-shifting provision, summary judgment in favor of an infringer with respect to some portion of the infringer's gross revenues may, in the proper circumstances, be appropriate." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003).

Godfather and Johnson seek to limit CTP's recovery to any profits Godfather earned from its website sales rather than from its retail store or from telephone orders. Godfather and Johnson explain that during discovery CTP sought information about Godfather's total sales during the relevant period of time, including sales made at its retail store and through phone orders, rather than just the sales that were made from the infringing portions of its website. Godfather and Johnson argue that CTP has failed to adduce sufficient evidence of a causal connection between the copyright

infringement that occurred and the total sales earned by Godfather during the relevant time.

Generally speaking, there are two categories of copyright cases in which courts have awarded summary judgment for particular categories of revenue. Courts have granted summary judgment in cases where (1) there is no reasonable connection between the infringement and a given stream of revenue; and (2) despite the existence of some connection, the plaintiff has failed to offer anything more than mere speculation as to the existence of a causal connection. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001) (finding that the term "gross revenue" under the Copyright Act means "gross revenue reasonably related to the infringement, not unrelated revenue streams"); *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002) (granting summary judgment on a portion of the damages because although it was conceivable that infringing use of a picture on a brochure could cause increased profits for symphony, plaintiff had failed to adduce evidence suggesting an actual causal connection).

After review, the Court finds that CTP has demonstrated a sufficient casual connection between Godfather's website and its gross revenues to send the issue of damages to a jury. CTP's expert witness has testified that

he believes the infringing website was involved in producing seventy percent of all of Godfather's sales since 2007, when Godfather implemented the infringing website. Additionally, the expert cites several studies that he conducted. One survey indicated that over ninety percent of adults regularly browse the internet before buying an item in a store. Another survey indicated that over ninety percent of automotive parts shoppers perform online comparisons prior to purchasing the parts and do not buy from companies that do not have an effective online presence.

Furthermore, CTP has documented frame shots of the Godfather website that show both directions and a map to the physical store, as well as a phone number for telephone orders, illustrating that the website also serves as facilitator of physical store and telephone sales. Godfather and Johnson do not dispute the importance and prevalence of websites in making purchases. Common sense also suggests that an effective website will increase sales in a physical store and result in more telephone orders.

Although Godfather disputes many of the expert's assertions, the evidence proffered by CTP is sufficient to establish at least some causal connection between Godfather's website and its gross sales. For this reason, it would be improper to grant summary judgment on this issue in

favor of Godfather and Johnson. Having said that, the Court remains skeptical that CTP will be able to convince a jury that all of Godfather's sales during the relevant period of time were attributable to the infringing website. Presumably, Godfather and Johnson will offer counter-evidence at trial that will show that some of the profits that Godfather earned were not attributable to the infringing portions of the website.

### 8. <u>Personal Liability of Johnson</u>

Finally, Johnson argues in a short two-sentence paragraph that he should be entitled to summary judgment on all claims because he was merely an employee of Godfather.

CTP responds to this argument by citing the Eleventh Circuit's decision in *Southern Bell Telephone & Telegraph Co. v. Associated Telephone Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985), in which the court held that an "individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement."

Based upon the reasoning of *Southern Bell Telephone*, the Court agrees with CTP that Johnson is not entitled to summary judgment on all

28

claims just because of his employment status with Godfather. Contrary to Johnson's averment, he was not just a regular employee of Godfather; he was the CEO. Johnson played a direct role in hiring Christman away from CTP. As the CEO of Godfather, Johnson also had a financial interest in the infringing activity and the right to supervise Christman's activities. Accordingly, there is at least a jury question as to whether Johnson had the requisite involvement to be personally liable for the torts in question. Finally, the Court finds it telling that Johnson failed to raise any arguments in his reply brief on this issue. For all of these reasons, the Court denies this portion of Johnson's motion for partial summary judgment.

## III. __Conclusion__

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Godfather and Johnson's motion for partial summary judgment [73]; DENIES CTP's motion for partial summary judgment on its claims for trade secret misappropriation and unfair competition [76]; and DENIES CTP's motion for partial summary judgment on the issue of entire liability [91]. The only claims remaining in this action against Godfather and Johnson are for copyright infringement under the Copyright Act and

trade secret misappropriation under the GTSA. The parties are DIRECTED

to file the consolidated pretrial order within thirty days.

IT IS SO ORDERED this 10th day of August, 2010.

Timothy C. Batten, Sr.
United States District Judge